# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

IN RE: BAUSCH HEALTH COMPANIES INC. F/K/A VALEANT PHARMACEUTICALS INTERNATIONAL, INC. STOCKHOLDER DERIVATIVE LITIGATION

**Lead Case No. 19-17833-MAS-LHG**

(CONSOLIDATED WITH CASE NO. 3:19-CV-17987-MAS-LGH)

JUDGE MICHAEL A. SHIPP
JUDGE LOIS H. GOODMAN

THIS DOCUMENT RELATES TO:

ALL ACTIONS.

**REPORT & RECOMMENDATION OF THE SPECIAL MASTER JUDGE DENNIS CAVANAUGH, RET.**

The matter before the Special Master is a Motion filed by nominal defendant Valeant Pharmaceuticals International Inc., along with 16 individually named defendants, to dismiss the plaintiffs' consolidated Complaint.[1]  The plaintiffs are Valeant shareholders who have filed derivative claims against current and former officers and directors of the corporation.

In deciding this Motion, the Special Master has reviewed and considered the following items:

1. Defendants' Memorandum of Law and exhibits in support of the Motion to dismiss;
2. Plaintiffs' Memorandum and exhibits in opposition to the Motion; and
3. Defendants' Reply Memorandum.

For the reasons to be set forth more fully in this Opinion, defendants' Motion to dismiss the consolidated Complaint is granted.

---

[1]  For the purpose of this Order and Opinion, the corporate entity, now known as Bausch Health Companies, Inc., will be referred to as Valeant.

## Procedural  History and Statement of Facts

The Motion arises from a derivative lawsuit filed against nominal defendant Valeant as well as 16 individual defendants who have been affiliated with the corporation as current or former officers and directors.  The named individual plaintiffs are David Shabbouei, a California citizen, and William Wessels, a Texas citizen.   On June 4, 2018, and on July 30, 2018, Shabbouei and Wessels, transmitted nearly identical letters to Valeant's Board of Directors charging the individual defendants with "breaches of fiduciary duties, violation of Sections 10(b) and 20(a) of the Exchange Act, and any applicable laws, rules and regulations related to the wrongdoing alleged."   Approximately four months later, on November 29, 2018, a special committee of Valeant's Board of Directors determined that the corporation would take no further action in response to the shareholder's demands and the plaintiffs were so informed by letter.

Within a year, the plaintiffs filed Complaints – Wessels on September 10, 2019, and Shabbouei on September 13, 2019.  In December 2019, the parties filed a Stipulation and Proposed Order to consolidate the actions and to establish a briefing schedule.  Included was a provision stating that the parties agreed "the question of whether the litigation is subject to dismissal pursuant to British Columbia law applicable to putative derivative actions brought on behalf of corporations organized under the laws of British Columbia, presents a threshold dispositive issue that should be resolved at the outset of this litigation…"  [Defendants' Memorandum, p. 5.]

On February 5, 2020, the actions were transferred to the Special Master.

Plaintiffs filed a consolidated Complaint on March 7, 2020, asserting the following causes of action against the named defendants:

1.      Breach of fiduciary duties of care and loyalty;

2.      Waste of corporate assets; and

3.      Contribution and indemnification under Sections 10(b) and 21(D) of the Securities Exchange Act for liabilities Valeant may incur in the pending class action lawsuit.

The parties agree to the following foundational facts as to Valeant's corporate status. That is, Valeant was founded in California in 1959 as ICN Pharmaceuticals Inc. and incorporated in Delaware in 1986.  In 2013, Valeant acquired Canadian corporation Bausch and Lomb Holdings Inc. and changed its corporate structure.  In 2018, Valeant changed its name to Bausch Health Companies Inc.

Indisputably, the plaintiffs did not seek leave of the British Columbia courts to bring a derivative action and did not file in that forum – failures which defendants assert are fatal since, they claim, the British Columbia court has exclusive jurisdiction over derivative actions against Canadian business entities incorporated in that province.  The defendants now move under Rule 12(b)(6) to dismiss the consolidated Complaint for failure to have sought leave or to have filed suit in British Columbia.  The defendants also assert that the claims for contribution for future liabilities Valeant may occur are subject to dismissal on jurisdictional grounds because those claims are "unripe."  [Rule 12(b)(1).]  Further, they say, "should Valeant's pending settlement of the Securities Class Action be approved…Valeant's right to contribution from the individual defendants will be barred by the PSLRA" [Private Securities Litigation Reform Act].

The parties make the following respective arguments in support of their positions.

3

## Defendants' Argument

Defendants assert that this derivative suit is governed by the laws of British Columbia. Plaintiffs (a) having failed to seek leave in that forum and (b) having failed to file there, cannot bring suit in the Federal Court for the District of New Jersey and, therefore, their Complaint should be dismissed.

Supporting this, the defendants point to Rule 12(b)(6) which reads in pertinent part:

> **How to present defenses.** Every defense to the claim for relief in any pleading must be asserted in the responsive pleadings if one is required. But a party may assert the following defenses by motion…

> (6) failure to state a claim upon which relief can be granted…

Defendants say there are only two issues requiring resolution: (1) whether British Columbia law applies and (2) if it does, whether it mandates a dismissal.

Defendants maintain that in this Circuit and District, courts often adjudicate choice of law questions at the motion stage and determinations of foreign law are questions of law to be decided by the court. Citing Rule 44.1, they go on to maintain that derivative suits are to be determined by the law of the forum in which the company is incorporated, here British Columbia. Further, Canadian corporate laws as to derivative suits are substantive, not procedural, and are not displaced by the procedures of the local forum. The specific law implicated is the British Columbia Business Corporations Act ("BC Act"). Given that the Complaint alleges that individual Valeant officers and directors breached their fiduciary duties, wasted assets, were unjustly enriched and contributed to damages under the Exchange Act, each claim implicates the internal relationships between the corporation, its shareholders and officers and directors. Defendants further assert that this doctrine, a "firmly established choice of law

principal," in turn, requires that internal corporate relationships are governed by the law of the state of incorporation.

According to defendants, New Jersey choice of law governs and under its rules, the law of the state of incorporation controls internal corporate affairs including the laws concerning maintaining derivative suits. This doctrine, defendants say, is also applicable to corporations organized under foreign law. This then takes us to the BC Act.

Defendants state that this statute governs derivative actions against British Columbia companies. Defendants quote heavily from that Act but, most significantly, Sections 232 and 233. These provisions obligate a plaintiff to seek leave of court to prosecute a derivative suit ("to enforce a right, duty or obligation owed to the company…or…to obtain damages for any breach of a right, duty or obligation…"). The court needs to weigh certain factors in deciding to grant or deny leave including whether the "complainant" (essentially meaning the shareholder(s)) made reasonable efforts to cause the directors of the company to prosecute/defend the legal proceeding, whether the complainant has given notice of the application for leave, whether the complainant is acting in good faith and whether it is in the best interest of the corporation for the proceeding to be prosecuted or defended. Defendants emphasize that the purpose of the Act – specifically its requirement for leave of court – is designed to protect corporations against unwarranted derivative suits which could be financially draining and harm the corporation's shareholders while, at the same time, providing a mechanism to bring suit when suit is appropriate. [Defendants' Memorandum, pp. 12-13.]

Defendants go on to say that plaintiffs failed to seek leave and therefore the British Columbia court had no opportunity to consider the validity of plaintiffs' actions and determine

whether they had a substantive right to bring suit anywhere on behalf of Valeant.  The defendants further argue that under the Act, only the British Columbia Supreme Court ["BC Court"], a trial level court, is authorized to control litigation against a company incorporated in the province, i.e., the Act provides that such actions "may [not] be discontinued, settled or discussed without approval of the court."  Once leave is granted, only the provincial court can oversee derivative litigation.  [Defendants' Memorandum, pp. 13-15.]

In turn, defendants assert, since the plaintiffs failed to bring suit in the BC court, this failure constitutes "independent grounds for this court to dismiss the Consolidated Complaint." In other words, the defendants are asking this court to dismiss the Complaint on grounds that the plaintiffs failed to take a necessary, preliminary step – seeking leave of the British Columbia court to bring suit.  "[F]iling in the improper forum is grounds for a dismissal, whether on Rule 12(b)(6) grounds or as a matter of comity."  [Defendants' Memorandum, p. 17.]

Defendants additionally address that plaintiffs' causes of action brought "derivatively for contribution and indemnification under §§ 10(b) and 21(D) of the Exchange Act."  Defendants argue that this claim is "unripe" since there has been no finding of liability in the class action pending final settlement approval.  Should it be approved, defendants maintain, all claims for contribution against individual defendants are barred "by operation of the same PSLRA provisions that define the contribution right."  [15 USC § 78(u-4)(f)(7).]  [Defendants' Memorandum, p. 20.]

Moreover, defendants say, if the plaintiffs' settlement is finally approved, contribution claims are also barred under the PSLRA, i.e., the statute provides that a "covered person" who settles any private action before final verdict shall be discharged from all claims for contribution

and requires the court to ban all future claims for contribution.  Since the individual defendants are parties to the pending settlement, they assert that they are "settling covered persons" and once settlement is approved, contribution claims will be discharged and all future claims barred. [*Id.*]

## Plaintiffs' Argument

Plaintiffs assert that federal and local (New Jersey) procedural and substantive law – not Canadian law – governs this action.  Given this and given the assertion that the plaintiffs took appropriate procedural steps pre-suit, they argue that they have filed a consolidated Complaint that is appropriately pled and should not be subject to dismissal.

Plaintiffs go on to state that because the claims here arise under the Securities Exchange Act of 1934 (15 USC §§ 78(j)(b) and 78 (u-4), this court has properly exercised federal question jurisdiction under 28 USC § 1331.  Similarly, the court has supplemental jurisdiction over the state law claims (28 USC § 1367).  [Plaintiffs' Memorandum, p. 4.]

As to the choice of law issue, plaintiffs assert that the threshold question, citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938), is whether the leave provision here is procedural or substantive.  If procedural (and an applicable federal statute, rule or policy exists), federal procedural law applies.  If substantive, the substantive law of the forum state (New Jersey), including its choice of law rules, applies.  [Plaintiffs' Memorandum, p. 11.]

Plaintiffs argue that there is a federal rule which governs – Rule 23.1.  This Rule, entitled "Derivative Actions," describes prerequisites and pleading requirements and also the necessity of court approval prior to final resolution of a derivatives lawsuit.  Plaintiffs state that they have met the prerequisites and pleading requirements in that they are properly situated shareholders

who have filed a verified complaint, filed it without collusion to defer jurisdiction and have particularized efforts to obtain desired action from the company's directors and reasons for not obtaining the action.  [Plaintiffs' Memorandum, pp. 11-12.]

Plaintiffs further argue that the BC Act's leave provision is procedural, not substantive, and therefore they were not required to seek leave of the British Columbia court before filing suit in the District of New Jersey.  [Plaintiffs' Memorandum, pp. 15-16.]

Taking this position a step further, plaintiffs state that a Federal Court sitting in diversity or hearing supplemental state law claims applies the choice-of-law rules of the forum state to determine which state substantive law controls.  In New Jersey, according to plaintiffs, these determinations are made on an issue-by-issue basis and this state has adopted the "most significant relationship" test.  That test, in turn, has two prongs:  determining (1) whether under the potentially applicable law a conflict exists and (2) which of the multiple jurisdictions has the "most significant relationship" to the claim.  As to the first, plaintiffs maintain that the "demand" requirements (meaning its demands directed to the Board) have been met either under New Jersey or British Columbia law.  Hence, no conflict exists.  [Plaintiffs' Memorandum, pp. 17-18.]

Arguing in the alternative, plaintiffs state that assuming this court finds that the leave provision is substantive and there is a conflict, an analysis of New Jersey Conflicts of Law requires that the derivative suit remain here.

Plaintiffs' attack defendants' argument regarding the "internal affairs doctrine," one that defendants maintain creates a presumption in favor of the state of incorporation, the Province of

British Columbia.  Therefore, plaintiffs argue, this court must decide whether the current dispute is, in fact, an "internal affair."  [Plaintiffs' Memorandum, p. 20.]

In arguing against the application of the internal affairs doctrine, plaintiffs take the position that the BC Act leave provision does not speak to matters "which are peculiar to the relationships among…the corporation and its current officers, directors and shareholders."  They maintain that the defendants have conceded that the alleged misconduct "reached far beyond the internal affairs" of Valeant, mandating a close look at New Jersey's relationship to this matter.  Plaintiffs assert there are exceptions to the internal affairs doctrine and the court must proceed in a choice-of-law analysis "to determine whether, despite this presumption, New Jersey has a more significant relationship to the disputed corporate actions" than British Columbia.  [Plaintiffs' Memorandum, p. 21.]

Relying in part upon the Restatement (Second) of the Conflict of Laws, specifically § 309, plaintiffs assert that the law of the state of incorporation will be applied to a director's or officer's liability except where some other state has a more significant relationship, pointing to factors listed in § 6 of the Restatement – comity, the interest of the parties, interest underlying the field of tort law, judicial administration and competing interests of the respective states.  Factors specific to this suit implicating these principles are, according to plaintiffs:

- Valeant was a corporation founded in the U.S., which is traded on the New York stock exchange but its officers have circumvented New Jersey laws and defrauded New Jersey investors.

- Valeant's principal place of business is in New Jersey where, plaintiffs say, the scheme to defraud was carried out.

- The overriding interest rests with New Jersey to protect the integrity of its laws from a fraudulent scheme and, as such, Valeant should not be permitted to have a "safe harbor" or "hide behind" British Columbia corporate law.

- The interests of the parties and judicial administration overwhelmingly favor New Jersey and plaintiffs point to the fact that 13 of the 16 defendants are U.S. citizens and five reside here.

- The application of New Jersey law would be easier than that of British Columbia but this court is capable of ruling on either local or foreign law and adjudicating familiar facts.

- Plaintiffs state that the "nerve center" of Valeant's legal conduct was located in New Jersey and that the breaches of fiduciary duties were orchestrated from Bridgewater where Valeant's senior executives were located and domiciled.

- Plaintiffs argue that it was specifically New Jersey's generic substitution law that Valeant sought to circumvent by the construction of a network of pharmacies and a series of shell companies owned through Philidor, allowing Valeant to enjoy the benefits of a top pharmaceutical hub, while orchestrating a scheme to subvert local law and defraud citizens of this state and the U.S.

[Plaintiffs' Memorandum, pp. 25-29.]

In short, plaintiffs maintain that Valeant is the exception to the internal affairs doctrine.

Plaintiffs also insist that the doctrine of comity, relied upon by the defendants, is inapplicable here and should not compel dismissal of the suit. Arguing against defendants' interpretation of *Fleeger v. Clarkson Co. Ltd.*, 86 FRD 388 (N.D. Texas 1980), plaintiffs maintain that this action, unlike *Fleeger*, was first brought in this court, has no parallel proceeding in British Columbia, and has no Canadian court order in place for which comity might be appropriate. In short, plaintiffs maintain that the defendants' reliance on comity is a request that this court abstain from exercising jurisdiction simply because a foreign law exists. [Plaintiffs' Memorandum, p. 32.]

Finally, plaintiffs make several brief additional arguments.

As to defendants' position that the Complaint is "unripe" and barred by the pending settlement, plaintiffs state that this is not a jurisdictional issue and the settlement has not received

final approval.  They argue that the Special Master should not give any weight to the opinions of the Canadian lawyer whose declaration has been served on behalf of the defendants and dispute the interpretation of British Columbia law contained in the report.  They also seek an opportunity to take testimony regarding these opinions.

## Findings

The motion before this Court arises out of a matter in a series of lawsuits very familiar to the Special Master, including a class action pending before the court awaiting final approval. Given this, the Special Master assumes that the parties are intimately familiar with the underlying facts leading to litigation filed against defendant Valeant Pharmaceuticals International, Inc.

This particular matter and the motion which needs to be adjudicated essentially arise out of a consolidated Complaint filed by the plaintiffs on March 7, 2020.  This Complaint and the allegations voiced in that Complaint are intricately entwined with and form the factual basis upon which any resolution of this motion must be based.  That Complaint, a voluminous document which in many respects mirrors the factual allegations set forth in the class action (at least as to the actions of the directors and officers of the corporation) is what is commonly known as a derivative suit, that is, a suit filed by disaffected shareholders alleging inappropriate conduct by those individuals running the corporation.  Here, two shareholders allege that Valeant officers and directors committed acts which typically form the underpinning of a derivative action, that is: (1) breach of fiduciary duties of care and loyalty; and (2) waste of corporate assets by those individuals.  In other words, individuals who maintained power and control over

11

Valeant took actions or failed to take actions harmful to the corporation and profited personally from doing so.

The third prong of plaintiffs' allegations center on a claim for contribution and indemnification under two provisions contained in the Securities Exchange Act for liabilities that the corporation may incur and the pending, but not finally settled, class action lawsuit.  However, in reviewing the plaintiffs' Complaint and in reviewing plaintiffs' arguments in opposition to this motion, it is evident that the wrongful acts alleged against the officers and directors are the same acts which give rise to the charges that they breached their fiduciary duties of care and loyalty and wasted corporate assets all to their benefit.

The issue then is not whether the plaintiffs as disaffected shareholders have a theoretical basis underlying their cause of action against the officers and directors such that they can continue to pursue this litigation in the name of the corporation, Valeant.  Instead, and in accordance with the legal arguments presented by both sides, the issue turns on whether the plaintiffs inappropriately filed suit in this District, having failed to seek leave and to sue on the same basis in the courts of British Columbia and whether this failure requires a dismissal of the action.

Defendants have fashioned their dismissal motion on the basis of two rules – Rule 12(b)(1) and 12(b)(6).  The former implicates the so called "ripeness" of their claim; the latter implicates whether by failing to seek leave to file suit in Canada, the plaintiffs are bereft of a cause of action upon which relief can be granted.  The Special Master finds that the crux of this dispute arises out of Rule 12(b)(6) and will now address that issue.

As it has often been stated, on a motion to dismiss for failure to state a claim upon which relief can be granted, a court is required to accept all factual allegations as true, construe the complaint in light most favorable to the plaintiff and to determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Broadcom Corp. v. Qualcomm Inc.*, 501 F. 3d 297, 306 (3d Cir. 2007). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S. Ct. 1937 (2009). Our courts sometimes express this as being a three part test, that is, a court must: (1) note the necessary elements a plaintiff must plead to state a claim; (2) accept as true all well pleaded allegations in a light most favorable to a plaintiff; and (3) determine whether the alleged facts show the existence of a plausible claim for relief. *Fowler v. UPMC Shadyside*, 578 F. 3d 203, 210 (3d Cir. 2009) and *Ashcroft*, 556 U.S. at 679.

Accordingly, for the purposes of this motion, the Special Master has accepted as true the factual allegations made by the plaintiffs against the officers and directors of Valeant and that they have sufficiently pled those facts to demonstrate a plausible claim for relief.

With that said, the threshold question is whether the statute at issue which obligates shareholders to seek leave constitutes a requirement that is procedural as opposed to substantive. If this is a procedural restriction, then Federal procedural rules apply; if substantive, then the forum state's choice of law rules are applicable to determine which jurisdiction's substantive law controls. *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 61 S. Ct. 1020 (1941).

The statute at issue is entitled the British Columbia Business Corporations Act, S.B.C. 2002, C. 57 ("BC Act"). The provisions of that statute relevant here are contained within Part 8,

Division I "Court Proceedings," specifically Section 227 entitled, "Complaints by shareholder." That section enumerates potential causes of action which could be brought by a shareholder and also enumerates remedies to address alleged wrongs by the directors of a corporation.

Section 232 is entitled "Derivative actions." Among other things, that provision defines "complainant" to mean a shareholder (or director) of the company. The provision goes on to state:

> (2)  A complainant may, with leave of the court, prosecute a legal proceeding in the name and on behalf of the company
>
> > (a)  to enforce a right, duty or obligation owed to the company that could be enforced by the company itself, or
> >
> > (b)  to obtain damages for any breach of a right, duty or obligation referred to in paragraph (a) of this subsection.
>
> (3)  Subsection (2) applies whether the right, duty or obligation arises under this Act or otherwise.
>
> (4)  *With leave of the court*, a complainant may, in the name and on behalf of a company, defend a legal proceeding brought against the company.  [Emphasis added.]

In short, the provisions described above constitute the statutory prerequisites for a shareholder of a corporation to bring an action against the officers and directors of that company on behalf of the entity, a so-called "shareholder's derivative suit." As stated in section (4), leave of court is required before a shareholder may bring such an action.

In Section 233(1), the BC Act goes on to describe the factors upon which a court may grant leave to a complainant/shareholder, including a requirement that a complainant has made reasonable efforts to cause the directors to prosecute or defend a proceeding; a requirement that

appropriate notice for leave has been given to the company; an obligation that the complainant act in good faith; and a determination by the court that it is in the best interests of the company for legal proceedings to be prosecuted or defended.  [Section 233(1).]

The statute provides parameters by which the court controls a shareholder's derivative proceeding including the need for court approval for disposition of the suit, that is, "No legal proceeding prosecuted or defended under this section may be discontinued, settled or dismissed without the approval of the court."  [*See*, Sections 233(3)-(5).]

Finally, in Part 1, Division I of the Act ("Interpretation"), the statute defines the "court" to mean the Supreme Court of the Province of British Columbia.

In short, the BC Act explicitly provides for the initiation and control of shareholder's derivative suits under the law of that province and obligates its Supreme Court – a trial level court – to analyze whether a shareholder's action should be authorized.  Following authorization, the court is empowered to control proceedings through termination.

While plaintiffs argue that the BC Act is procedural, the Special Master finds that the Act on its face as well as prevailing case law demonstrates that this statute and its explicit provisions regarding shareholder's derivative suits are substantive.  At pages 13 through 15 of defendants' memorandum of law, they cite several cases which support their position that the BC Act (and similar provincial statutes in Canada) is an act of substance in terms of the leave provision.  One of the cited cases, *Locals 302 and 612 of Int'l Union of Operating Eng'rs-Emp'rs Constr. Indus. Ret. Tr. v. Blanchard*, 2005 WL 2063852 (S.D.NY, August 25, 2005) seems most instructive in this regard under factual circumstances closely similar to those here.

*Blanchard* was a shareholder's derivative suit filed by two union retirement trust funds against a federally charted Canadian corporation.   That entity, Nortel, moved to dismiss contending, among other things, that Canadian law applied to the derivative action, specifically the Canadian Business Corporations Act (CBCA), a federal statute with substantially similar provisions to that of the provincial BC Act.   Section 239 of that Act provides the governing law for derivative action against a Canadian corporation and also enumerates specific Canadian courts where such actions may be exclusively heard.  *Blanchard,*  2005 WL 2063852 at *3.   Like plaintiffs here, the union funds argued that Section 239 was procedural rather than substantive and therefore should not bar the derivative action from continuing in the United States District Court in New York.   However, the court found this argument to be without merit.

Citing, in part, *Hausman v. Buckley*, 299 F. 2d 696 (2d Cir. 1962), and relying also upon an expert's report interpreting Canadian law, the *Blanchard* court concluded that the BC Act's leave provision was indeed substantive.   The court stated:

> Further, both the Supreme Court and Court of Appeals have found that demand rules in derivative actions are substantive in nature. *See*, *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96-97, 108-09 (1991); *RCM Sec. Fund, Inc. v. Stanton*, 928 F.2d 1318, 1326-27 (2d Cir. 1991).   As stated in *Hausman*, "the issue is not just 'who' may maintain an action or 'how' it will be brought, but 'if' it will be brought".   *Hausman*, 299 F. 2d at 701.   No determination could be more substantive.   Accordingly, the CBCA's leave requirement is "not a mere formality" but rather one of several substantive "statutory preconditions…intended to protect the corporation from undue interference." Charas v. Sand Tech Sys. Int'l. Inc., No. 90 Civ. 5638, 1992 U.S. Dist. 15227 at *7 (S.D.N.Y. Oct. 7, 1992).

[*Blanchard,* 2005 WL 2063852 at *6.]

Our Supreme Court in *Kamen* set forth a detailed, historical presentation as to why demand requirements in shareholder's derivative suits are significant and not merely low procedural hurdles for a party to clear.  In holding that a court entertaining a derivative action under the Investment Company Act (ICA) must apply the demand futility exception defined by the law of the state of incorporation, the Court analyzed the derivative form of action.  The Court went on to note that this cause of action was devised as a suit in equity "to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers.'"  *Kamen* at 96, citing *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548, 69 S. Ct. 1221, 1226 (1949).  However, the Court went on to state:

> To prevent abuse of this remedy, however, equity courts establish as a precondition "for the suit" that the shareholder demonstrate "that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions".   [Citation omitted.]
>
> ***
>
> In our view, the function of the demand doctrine in delimiting the respective powers of the individual shareholders and of the directors to control corporate litigation clearly is a matter of "substance", not "procedure".
>
> [*Id.* at 96-97 (citation omitted).]

As to other cases supporting the notion that a leave provision in a derivative suit is substantive, *see*, *Taylor v. LSI Logic Corp.*, 715 A. 2d 837, 839 (Del. 1998), overruled in part on other grounds by *Martinez v. E.I. Dupont de Nemours Co.*, 82 A 3d 1102 (Del. 2014); *In Re Atlantic Power Corp. Sec. Litig.*, 98 F. Supp. 3d 119, 134 (D. Mass. 2015); *Charas v. Sand Technology Systems Int'l., Inc.*, 1992 WL 296406 (Oct. 7 1992) ("Application for authorization

17

is not a mere formality"); and *Brunk v. Eighth Judicial District Court*, 449 P. 3d 1270 (Nev. 2019).

Plaintiffs rely to some degree on *Fagin v. Gilmartin*, 432 F. 3d 276 (3d. Cir. 2005) and *Messinger v. United Canso Oil & Gas Ltd.*, 486 F. Supp. 788 (D.Conn. 1980) to argue that the BC Act leave provision is procedural; however, the Special Master does not find either case persuasive.

In fact, as defendants argue, *Fagin* actually *supports* their position here. *Fagin* involved shareholder suits against pharmaceutical manufacturer Merck and Medco (its wholly owned subsidiary). Merck was incorporated in New Jersey; Medco in Delaware. Like here, the plaintiffs asserted that the officers and directors of both entities violated fiduciary duties and claimed demand futility as to Medco's board. The case largely revolved upon whether the trial court appropriately relied on an investigative report and therefore should have converted a motion to dismiss into one for summary judgment. However, conflict of laws issues were also implicated. In analyzing whether the plaintiffs made an appropriate demand to each of the boards (incorporated in different states), the court did not even consider whether the respective jurisdictions' demand laws were substantive or procedural and instead – taking the position that they were undoubtedly substantive – applied New Jersey law to Merck and Delaware law to Medco. *Fagin,* 432 F. 3d at 282-283.

*Messinger*, also contrary to plaintiffs' argument, does not support their position that failure to obtain leave of a Canadian court (this one in the province of Ontario) was a procedural, not substantive restriction. The *Messinger* shareholder's derivative suit focused on whether a demand was required to be made upon the majority shareholders as a condition precedent to

18

commencement of the action – an event which occurred *prior to* the advent of the Ontario Business Corporations Act. The court then used that Canadian statutory authority as guidance in determining whether the demand requirement was excused. In short, the court was not required to analyze whether the provision was procedural or substantive and the court employed Canadian law in determining whether the plaintiffs were excused in failing to make a demand.

In short, the Special Master finds that the prevailing law supports the conclusion that the leave provision in the BC Act is substantive, not procedural. Again, this statute does not simply address who can bring suit or how an action may be commenced but whether it will be brought at all – the "if." The right to enforce corporate claims "goes to the substance of that right, and cannot be treated as dealing with mere procedure by which claims are enforced." *Hausman*, 299 F. 2d at 701.

Having determined that the BC Act's leave provision and its requirements are substantive, the next step is to turn to a choice of law analysis. That is, a federal court sitting in diversity or hearing state law claims, applies the choice of law rules of the forum state, in this case New Jersey, to determine which jurisdiction's substantive law controls. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497, 61 S. Ct. 1020 (1941).

In engaging in this analysis, the court applies New Jersey's two-part "most significant relationship" test described in the Restatement (Second) of Conflict of Laws (the "Restatement"). *Maniscalco v. Brother Intl. (USA) Corp.*, 709 F. 3d 202, 206 (3d Cir. 2013) (citing *P.V. Exrel T.V. v. Camp Jaycee*, 197 N.J. 132, 962 A. 2d 453, 460-61 (2008)).

In the first step, a court must determine if an actual conflict exists "by examining the substance of the potentially applicable laws" with an eye towards whether a "distinction" exists

19

between them.  *Krys v. Aaron*, 106 F. Supp. 3d 472, 479 (D.N.J. 2015) (citing *Lebegern v. Forman*, 471 F. 3d 424, 428-30 (3d Cir. 2006)).

Then, in the event of an actual conflict, the court moves on to the second step to determine which jurisdiction possesses the "most significant relationship" to the claim at issue. *Krys,* 106 F. Supp. 3d at 479.  These choice-of-law principles consist of: (1) the interests of interstate comity, (2) the interests of the parties, (3) the interests underlying the field of tort law, (4) the interests of judicial administration, and (5) the competing interests of the states.  *Id.* at 479 (citing *Camp Jaycee*, 197 N.J. 132, 962 A. 2d at 463).

It is evident here that the parties do not dispute that the BC Act's leave provision on its face obligates a shareholder/complainant, when suing a British Columbia corporation, to first seek leave of that province's court in order to initiate a shareholder's derivative suit – clearly creating a conflict with New Jersey and Federal law by requiring the parties to seek relief exclusively in the jurisdiction in which Valeant is incorporated and not elsewhere.  This is a true conflict and, as such, obligates a court to proceed to the second step under New Jersey's conflict of law principles.

Defendants urge that in analyzing which state has the most significant relationship to this claim, the court must look to the internal affairs doctrine.  The internal affairs doctrine is a conflict of laws principle which recognizes that only one state "should have the authority to regulate a corporation's internal affairs-matters peculiar to the relationships among or between the corporation and its current officers, directors and shareholders – because otherwise a corporation could be faced with conflicting demands."  *Fagin*, 432 F. 3d at 282 (citing *Brotherton v. Celotex Corp.*, 202 N.J. Super. 148 (Sup. Ct. 1985)).  See also, *O'Brien v.*

*Virginia-Carolina Chem. Corp.*, 44 N.J. 25, 39 (1965), in which the court stated "[i]n most situations it is desirable to leave such matters to the courts of the state of the creation of the corporation."   The doctrine is equally applicable to foreign corporations as well as domestic entities.  *Krys*, 106 F. Supp. at 484.

Although plaintiffs argue otherwise and although they assert that the acts of the individual defendants here reached outside of and beyond the corporate entity and its shareholders, reviewing the allegations voiced in their Complaint clearly demonstrates that the crux of *this* litigation is a dispute between Valeant's shareholders and its officers and directors. Beginning on page 5 of their memorandum, plaintiffs describe in detail the bad acts and deceptive practices engaged in by Valeant's officers and directors, virtually the same bad acts detailed in the related class action complaint.  While undoubtedly those acts had a broad range and impacted third parties, those actions were fundamentally breaches of fiduciary responsibilities running from the individual defendants to the corporation (Valeant) and ultimately its shareholders.  Indeed, plaintiffs here seek to rectify that harm by stepping into the shoes, as it were, of that entity and suing those officers and directors for what they allege were flagrant fiduciary breaches which led to financial gain by the individuals involved.  Accordingly, it is evident that the causes of action in this suit and the relief sought by the plaintiffs directly implicate the relationships between the corporation's officers and directors and its shareholders – internal corporate affairs.

New Jersey courts seem to have coalesced around a rule that courts should generally apply the law of the state of incorporation.  *Valcom Inc. v. Vellardita*, 2014 WL 1628431 (D.N.J. Apr. 23, 2014) (citing *Brotherton*, 202 N.J. Super. at 154).  That is, New Jersey courts usually

adhere to this doctrine and direct that the law of the state of incorporation governs internal corporate affairs.  *Krys*, 106 F. Supp. 3d  at 484.  Hence, as plaintiffs even agree, the internal affairs doctrine creates a presumption in favor of applying the law of the state of incorporation. *Fagin*, 432 F. 3d at 282; *Resolution Trust Corp. v. Gregor*, 872 F. Supp. 1140, 1150 (E.D.N.Y. 1994).

Nevertheless, as plaintiffs argue, and as defendants also concede [*see*, Defendants' Memorandum, p. 11, footnote 9] while the law of the state of incorporation generally governs internal affairs of a corporation, this "default" doctrine is not without exceptions and in some situations may give way to the overriding interest of another state.  *See*, Restatement (Second) Conflict of Laws § 302 cmt. g.

Plaintiffs urge that in proceeding with the choice of law analysis to determine whether, despite the internal affairs presumption, New Jersey has a more significant relationship to the disputed corporate action, a number of factors should be considered with regard to Valeant and its officers and directors.   Among those factors, plaintiffs note that Valeant was initially incorporated in the United States, its shares are traded on the New York Stock Exchange, that the individual defendants' actions constituted a fraud against citizens of this country and of New Jersey and that Valeant's principal place of business is Bridgewater "where the decades-long scheme was masterminded, hatched and carried out."   Plaintiffs also point out that some of Valeant's principals reside or have resided in New Jersey.   Plaintiffs go on to say that New Jersey was the "nerve center" of this fraudulent and illegal conduct giving rise to the claims at issue here.  [*See*, Plaintiffs' Memorandum, pp. 26-28.]

While this argument has some charm and logic, the plaintiffs seek to argue too much. While its principal place of business is in New Jersey, there is no dispute that Valeant's locus of incorporation is in Canada but more importantly that the very acts complained of by the plaintiffs have a national if not international impact, not effects specific to or which have an undue impact on New Jersey.  The fact that Valeant is traded on the New York Stock Exchange (and many of the underlying allegations against the individual defendants were market maneuvers), actually supports the proposition that New Jersey's interests in this matter are no greater than any other state or country in which Valeant shareholders are located.  Yes, New Jersey investors were harmed but so were investors elsewhere and indeed the two named plaintiffs who have instituted this shareholders derivative suit hail from states as disparate as California and Texas.  Certainly they knew or could have ascertained information as to where Valeant was incorporated when purchasing shares of that entity with a reasonable expectation that, should a dispute arise, litigation might well be venued in that jurisdiction.  Further, while New Jersey law may very well have been violated, as even the plaintiffs argue, the wide ranging scheme was designed to circumvent the law of those jurisdictions anywhere Valeant did business.

True, Valeant's principal place of business happened to be located in this state, but that fact, in and of itself, does not constitute an overriding reason to ignore the internal affairs doctrine.  If that were the case, the doctrine would have virtually no import in shareholders derivative suits where an entity's principal place of business was in one state but that entity sought to be incorporated – and was incorporated – elsewhere.

Interestingly, both sides cite *ValCom*, in partial support of their divergent arguments here. *ValCom*, an instructive case, authored by Senior District Judge William H. Walls, involved (like

here) a complicated action concerning a film corporation and its founder whose breaches extended nationally and internationally. The many causes of action centered on the alleged misdeeds of the former chief executive officer of the corporation and his various supporters including members of the board of directors. Related suits were filed in multiple jurisdictions. The entity was incorporated in Delaware but its principal place of business was in Florida and most of the alleged fiduciary breaches occurred in that state. As to the fiduciary duty claims, the court applied the New Jersey conflict of law analysis discussed previously. Then, in the face of an argument by the defendants that Florida law should apply (since the vast majority of the alleged inappropriate actions occurred there, where the entity had its principal place of business and a number of the participants resided), the court stated:

> The alleged misconduct reached beyond the internal affairs of *ValCom*, as the panoply of suits in other jurisdictions makes clear. But the particular cause before this court is purely a suit by a corporation against its former directors and officers (and parties who posed as such). In light of the principle that "only one State should have the authority to regulate a corporation's internal affairs…because otherwise a corporation could be faced with conflicting demand," [citation omitted], the court will apply Delaware law.

[*ValCom,* 2014 WL 1628431 at *12.]

As detailed in the procedural history and statement of facts, the principal allegations here by the plaintiffs against the individual defendants can be stated as follows: The individual defendants were the fiduciaries of the corporation (Valeant). As such, they owed a duty of care and loyalty to that corporation. They breached that duty, wasted corporate assets, and as a result became unjustly enriched. The plaintiff shareholders now seek in this derivative suit to effectively place themselves in the shoes of that corporate entity. They have brought an action

against those directors and officers of the corporation who engaged in these acts in an effort to recompense the corporate entity.  Internal affairs are involved "whenever the issue concerns the relations [between or amongst] the corporation, its shareholders, directors, officers[,] or agents". *Labbe v. OSI Outsourcing Solutions Inc.*, 2015 WL 1851141 (D.N.J. April 22, 2015).  New Jersey courts adhere to this doctrine and generally apply the law of the state of incorporation to govern internal corporate affairs.  As to the allegations in this suit, the Special Master finds no compelling reason to diverge from the internal affairs doctrine which, in this case, requires applying the laws of the Province of British Columbia where Valeant is incorporated.

Having determined that the BC Act's leave provision is applicable, the next issue is a determination as to whether the plaintiffs' failure to seek leave requires a dismissal of the derivative suit.

As set forth previously, defendants argue that the plaintiffs, who failed to first seek leave of the British Columbia Supreme Court, have committed a fatal error requiring a dismissal of this lawsuit.  While neither party has identified precedent in which the underlying factual scenario fully parallels this matter, the Special Master finds that U.S. Courts have generally dismissed similar derivative suits when plaintiffs have failed to comply with Canadian corporate law requirements similar if not identical to those here.

*Blanchard*, previously cited in support of the proposition that the previously cited (Federal) Canadian Business Corporation Act (CBCA), like the BC Act, is procedural rather than substantive, also supports the proposition that a dismissal is required here.  In *Blanchard*, plaintiffs attempted to file a derivative action against a defendant which was a federally chartered Canadian corporation, then they faced a motion seeking dismissal as a result of having failed to

seek leave of a specifically enumerated Canadian court under the Act.  Like the BC Act, the CBCA provided governing law "for derivative actions against Canadian corporations and enumerate[d] specific Canadian courts where such actions may be exclusively heard." *Blanchard,* 2005 WL 2063852 at *3.  In granting a dismissal, the New York District Court wrote, "Both Canadian and the United States courts have made clear that where the CBCA specifically establishes exclusive jurisdiction over an action, that choice of forum must be respected" (citing Canadian court decisions implicating leave requirements of similar corporation acts in both Alberta and, as here, British Columba).  *Id.* at *3.

Blanchard relied to a significant degree on *Taylor v. LSI Logic Corp.*, previously cited. Although not a derivative suit, *Taylor* involved an action by a Canadian citizen against a Canadian corporation in Delaware under the CBCA.  The Delaware Supreme Court found it lacked jurisdiction to decide the shareholder's suit based on an oppression remedy found in the statute.  *Taylor*, 715 A. 2d at 841.  Referencing *Taylor* then, the court in *Blanchard* stated:

> Applying *Hausman*, the internal affairs doctrine and the *Taylor* line of cases to the present facts, there is no doubt that Canadian law applies to Plaintiffs' claims and that § 239 of the CBCA requires Plaintiffs to seek leave of a Canadian court specifically enumerated in Section 2 of the CBCA.  Accordingly, this court cannot properly exercise jurisdiction over Plaintiffs' derivative action.

[*Blanchard,* 2005 WL 2063852 at *4.]

*Fagin v. Doby George, LLC*, 2010 WL 11594783 (D.Nev. May 12, 2010), affirmed 525 Fed. Appx. 618 (May 31, 2013), is another matter with similar factual circumstances and arising out of the business corporation statute of another Canadian province, this time Yukon.  Plaintiffs brought a shareholder derivative suit in Nevada claiming breach of fiduciary duty by the

directors and officers of a Canadian corporation, WEX.  The defendant performed virtually all of its mining in Nevada, had a business office in Nevada and the plaintiffs were residents outside of that state.  The defendant moved to dismiss under the Yukon Business Corporation Act, a statute with similar, if not identical provisions to the BC Act including a provision obligating shareholder derivative plaintiffs to seek leave from the Yukon Supreme Court.  *Id.* at *4-5.

In dismissing the derivative claim, the district court, after citing the pertinent Yukon Business Corporation Act provisions stated:

> In other words, a mandatory precondition to bringing a derivative suit under Yukon law is to apply for and receive leave of the Supreme Court of the Yukon to do so.  Failure to do so requires dismissal of the action.  [Citations omitted.]

> Plaintiffs have not disputed the above interpretation of Yukon law, raising only the issue of whether Yukon law applies at all in opposition to the present motion.  Plaintiffs have not sought leave from the Yukon Supreme Court to bring the present action.  We concluded, therefore, that Plaintiffs have failed to comply with a mandatory precondition to bringing their derivative claims imposed by Yukon law, and Defendants are entitled to summary judgment on those claims.

> [Id. at *5.]

In *Charas v. Sand Technology Systems Int'l., Inc.*, 1992 WL 296406 (S.D.N.Y., Oct. 7, 1992), the plaintiffs brought a derivative suit claiming breach of fiduciary duty and mismanagement.  Sand, a Canadian corporation, moved under the CBCA, for dismissal.  That motion was granted, "because the claims plaintiffs seek to bring are derivative in nature, Canadian law requires that prior judicial authorization be obtained before commencing suit."  *Id.* at *7.  Similarly, in *Brunk v. Eighth Judicial District Court of the State of Nevada*, 449 P. 3d 1270 (Nev. 2019), another derivative suit against a Canadian corporation, this time under the

British Columbia statute, the court found that, having failed to seek leave, plaintiff's complaint

required dismissal.  As the court stated:

> Having determined that Wolfus's claims against the Directors are
> derivative in nature, as allegations of mismanagement which
> harmed Midway directly, we conclude that the law of British
> Columbia, where Midway was incorporated, controls Wolfus's
> claims.  *Vaughn v. L.J. Int'l., Inc.*, 94 Cal. Rptr. 3d 166, 175 (Ct.
> App. 2009) (Under the internal affairs doctrine the rights of
> shareholders in a foreign company, including the right to sue
> derivatively are determined by the law of the place where the
> company is incorporated) (internal quotation marks omitted).
> British Columbia law requires a corporate shareholder to apply for
> leave of the court of the jurisdiction before filing a derivative
> action, and requires the shareholder to provide notice of such
> application to the company and demand that the directors take
> remedial action prior to commencement of the suit.   [Citations
> omitted.]   The failure to obtain leave of court is fatal under British
> Columbia common law.  *Bruneau v. Irwin Indus. (1978) Ltd.,* 2002
> CarswellBC 1107, Para. 19 (Can. B.C.S.C.) (WL) ("[W]here an
> action [is] in fact a derivative action but commenced without leave,
> the appropriate remedy [is] to strike it as disclosing no reasonable
> claim.")

> [*Id.* at *8.]

See also, *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F. 3d 330 (9th Cir. 2015) which

distinguished *Taylor v. LSI Logic Corp.*, 715 A. 2d 837 (Del. 1998), but having found subject

matter jurisdiction, concluded that the Alberta Business Corporations Act provided the plaintiff

with his only remedy as a shareholder for oppression in his counterclaim against the Alberta

based corporate entity.   While the court found that foreign law could not determine the subject

matter jurisdiction of an American court:

> Nonetheless, dismissal was the proper judgment.  Although foreign
> law cannot limit the jurisdiction of an Article III court to entertain
> controversies, when it creates a right, that foreign law can
> determine the remedy.  Here, the Alberta Business Corporations
> Act provided a remedy available only through "the Court of the
> Queen's Bench of Alberta."  § 1(m).  Thus the counterclaim…is

one upon which no relief could be granted by the district court. Rule 12(b)(6) provides the vehicle for dismissal of a complaint (or in this case, a counterclaim) for "failure to state a claim upon which relief can be granted".

[*Seismic Reservoir,* 785 F. 3d at 335.]

Plaintiffs have not cited, nor can the Special Master find a closely analogous opinion arising out of a derivative lawsuit which would lend substantial support to the plaintiffs' position that the BC Act leave provision should be disregarded thereby permitting them to continue forward with this litigation. The cases referenced above, which were either derivative actions or suits alleging fiduciary breaches by corporate directors and officers, strongly support the proposition that the leave provisions in Canada's various corporations' acts must be followed when shareholders sue a Canadian corporate entity in the United States. As the courts in those matters stated, the leave provision is a mandatory precondition for suit and failure to meet this precondition requires dismissal.

Although the Special Master has reviewed the Declaration of J. Kenneth McEwen, Q.C., and although that Declaration is comprehensive and instructive, the Special Master's findings are predicated upon the state and federal decisions cited above. However, the Special Master believes that the analysis of Canadian business corporations law rendered by Mr. McEwen is fully consistent with the analysis and the conclusions reached by the various U.S. courts when required to consider the impact of Canadian law on derivative suits brought here against Canadian entities. The Special Master notes that the plaintiffs have not proposed an alternate analysis in response to this Declaration.

29

## CONCLUSION

For these reasons, the Special Master concludes that the BC Act's leave provision is substantive, not procedural, that under New Jersey conflict of laws principles, the internal affairs doctrine applies such that the law of the state of incorporation (here British Columbia) governs this suit against Valeant's corporate directors and officers; and as a result of plaintiffs' failure to seek leave to file suit in British Columbia, this matter must be dismissed pursuant to Rule 12(b)(6). Given this conclusion, there is no need to address the individual defendants' additional arguments seeking dismissal of this action.

Date: November 24, 2020

DENNIS M. CAVANAUGH, U.S.D.J. (Ret.)